23775. PROCTOR *v.* THE STATE.

DECIDED SEPTEMBER 17, 1934.

*Fariss & Langford,* for plaintiff in error.

*James F. Kelly, solicitor-general, J. Ralph Rosser,* contra.

. MACINTYRE, J. The first count of the indictment in this case charges that on July 11, 1933, in Walker county, Georgia, R. J. Proctor did "have, possess and control spirituous, alcoholic, malt and intoxicating liquor;" and the second count charges that on the same date and in the same county the defendant had in his possession, custody and control "malted and fermented liquor, which looked like beer, tasted like beer and smelled like beer, and had the general appearance of beer." The jury returned a general

verdict of guilty, and the defendant's motion for a new trial being overruled, he excepted.

It was agreed between counsel for the defendant and the State that "the beer that it is alleged was in possession of the defendant on said date does not contain more than 3 and 2/10 per centum of alcohol by weight," and that "the laws of the State of Tennessee and the laws of the State of Florida do not make the sale and possession of such beer unlawful."

Cecil Nelson, sworn for the State, testified in substance that he arrested the defendant between twelve and one o'clock in the daytime at Rock Springs, Walker county, Georgia, and found forty cases of beer (nine hundred and sixty bottles, witness thought) in the Chevrolet coach the defendant was driving; that a woman was in the car with the defendant; that the defendant told witness "he was going to Phenix City, Alabama," and asked witness "not to say anything about where he was taking the beer;" that he said "it had to be billed to Florida before he could get it;" that "the beer he had is known as 3 point 2 beer, that is, it looks like and smells like it" and "tastes like it;" that the defendant had an Alabama tag on his car; that when witness caught the defendant "he was traveling south on the LaFayette-Chattanooga Highway; that the defendant was not trying to conceal the beer; that the defendant did not tell witness that "he was going through Phenix City, Alabama, but that he was carrying the beer to Florida;" that the defendant told witness that he had "a bill for some of the beer, and showed me a bill some time during the day," and that "it was billed to somewhere in Florida;" that witness did not recall whether or not the bill was in the defendant's name; that witness "thought he had a bill for some of the beer, and for some he did not have a bill;" that "he had three or four different brands of beer;" that the road over which the defendant was driving "leads from Chattanooga, Tennessee, on through Georgia, and into the State of Florida;" that witness thought this road was "a direct route from Tennessee, through Walker county . . and on into the State of Florida," but that witness had never been in Florida; that the defendant was going south, and that witness stopped him between a quarter and a half mile south of Rock Springs "just beyond where the Alabama road turns off the pike;" that "there are different ways to go to Alabama by turning off;" that, three weeks before the defendant was

arrested, witness had seen him in West Rossville in a Chevrolet car with a woman against whom there was a charge; that on that occasion there was straw in the back of the car, but no beer, and that the defendant said he was "hauling feed from LaGrange, Georgia;" and that just before arresting the defendant on the second occasion, witness asked him "what kind of feed he was hauling," and the defendant said he had some beer, and asked witness to let him go. J. E. Cameron, sworn for the State, testified that the beer exhibited to the witness Nelson was the same beer that Nelson turned over to him with the defendant, and that some of it was Schlitz and some of it "Fall City Dark." J. C. Keown, sworn for the State, testified, in substance, that "the road that turns off the highway to which the witness Nelson referred, just south of Rock Springs, is called the Alabama road, but still is not a road to Alabama;" that this road runs parallel with the highway and comes back into it "right at the Chattooga and Walker county line;" that "to go from Rock Springs to Phenix, Alabama," witness "would go the Dixie Highway, . . Route No. 1;" that "you could go through Phenix City, Alabama, of course, in going from Rock Springs to Florida, or from Tennessee to Florida," but, "to be honest," witness did not know "which would be the most direct route;" and that, as witness remembered, the defendant had bills for only twenty cases of beer and "had forty cases in his car." Without objection, the State next put in evidence the beer referred to by the witnesses Nelson and Cameron.

The substance of the defendant's statement to the jury is as follows: "I run a garage at Chipley, Georgia. . . This boy that I was hauling this beer for is a personal friend of mine who lives in Florida, and he come by one day and says: 'How about hauling a little beer for me?' And I says: 'It is against the law to have beer in Georgia.' And he says: 'It isn't against the law to haul it through.' And I had read in the papers about it. So far as interstate commerce is concerned it wasn't against the law to haul it through, . . some judge had said so. And he was to pay me a dollar a case to haul it, delivered in Florida. I was to put it across the Florida line, and he was to take it on. . . So far as me telling Mr. Nelson about taking it to Alabama, in that he is mistaken. . . He asked me how far I would go through Georgia, and I says I go through Phenix City, Alabama, on across the

river at Columbus, and on through Dothan, Alabama, and that is the direct route to Florida. . . You couldn't take forty cases of beer and put it in a Chevrolet coach and hide it. Mr. Nelson stopped me and says: 'What you got?' And I says beer; and my wife was with me. . . So far as that being an Alabama car—that car had just been repossessed, and it was in my possession. I bought the beer in Chattanooga, Tennessee—bought twenty cases from . . Sid Jacobs, and here are the bills for it; and the Fall City five cases for which I had no bill came from the Fall City plant; but the other bills are right here." Cecil Nelson, recalled by the State, further testified: "The defendant told me they had legalized beer in Phenix City, Alabama, and that he could double his money on it there."

Under the facts and circumstances of this case, we are satisfied that the jury were warranted in concluding that the defendant was guilty, and we hold that the trial judge did not err in overruling the general grounds of the motion for a new trial.

Complaint is made in the first special ground of the following charge: "I charge you that there is only one question for you to determine, under the evidence in this case, and that is as to whether or not the beer in question was being moved in interstate commerce from one State, which permitted the legal possession and sale of beer, into another State, which permitted the legal possession and sale of beer." The assignment of error is that this charge "was unauthorized by the evidence, was hurtful to movant," and "erroneously restricted the question at issue," in that it "did not correctly state all of the issues under the evidence, as the evidence showed movant was either going to the State of Alabama or the State of Florida from the State of Tennessee with the beer as alleged in the indictment in his possession." This ground fails to show whether or not the possession and sale of beer was legal in the State of Alabama, and it does not appear in this connection that any request was made for a fuller or more detailed statement of the issue or issues. In this situation, this court can not say that the charge is objectionable for any reason assigned, or that it was harmful to the defendant, and we hold that the ground discloses no reversible error for any reason assigned.

In special ground 2 the court substantially instructed the jury that the admission by the defendant that he had the beer in Walker

county, Georgia, made out a prima facie case for the State, and that "the burden would then be shifted from the State to the defendant to prove to your reasonable satisfaction that the beer in question was being transported or moved in interstate commerce, as contended by the defendant, from the State of Tennessee, which permits the legal sale and possession of beer, into the State of Florida, which permits the legal sale and possession of beer," and that if the defendant failed to carry this burden, it would be the jury's duty to convict him; and that if he did carry that burden and proved to the "reasonable satisfaction" of the jury that the beer "was being moved in such interstate commerce," it would be the jury's duty to acquit the defendant. The first assignment of error is that this charge was hurtful to the movant, in that it placed upon him the duty to prove his innocence, "that is that the burden of proof was on movant to prove that the beer was being carried in interstate commerce and was lawfully in his possession." "The burden of proof generally lies upon the party asserting or affirming a fact, and to the existence of whose case or defense the proof of such fact is essential. . . " Penal Code (1910), 1020. "What amount of evidence will change the onus or burden of proof is a question to be decided in each case by the sound discretion of the court." Penal Code (1910), § 1021. The court's charge that the defendant entered upon his trial with the presumption of innocence in his favor and that this presumption remained throughout the trial until it was "overcome by proof of his guilt, by competent evidence, to a moral and reasonable certainty, and beyond a reasonable doubt," appears to be a fair and clear statement of the rule as to the presumption of innocence. The State unquestionably made out a prima facie case; indeed, the defendant admitted such a case. The defense made by the defendant was that he was transporting the beer in interstate commerce. That he was transporting this beer in interstate commerce was essential to his defense. We think that the court correctly charged that the burden was upon the defendant to make out this defense. In alibi cases it is erroneous for the court to instruct the jury that the burden is on the defendant to establish his defense by a preponderance of the evidence, the rule in such cases being that he must establish his defense "to the reasonable satisfaction of the jury." *Stanford* v. *State*, 153 *Ga.* 219, 236 (112 S. E. 130). We hold that the charge was not erroneous for the

reason assigned. Since the defendant himself positively denied that he was transporting the beer to Alabama, and planted his defense squarely upon the theory that he was carrying the beer from the State of Tennessee to the State of Florida, we do not think that it lies in his mouth to complain that the charge restricted the defense to the transportation of the beer from Tennessee to Florida. We hold that the charge does not disclose reversible error for any reason assigned.

It is insisted in special ground 3 that the court erred in charging the jury as follows: "Without intimating to you what has or has not been proven in the case, if you find the defendant bought beer in the State of Tennessee where it is lawful to sell and possess it, and was transporting the same from that State through the State of Georgia, and through the county of Walker to Phenix City, Alabama, I charge you that it would be your duty to convict the defendant of the offense charged." The assignment of error is: "Movant contends that this charge . . was erroneous and hurtful to . . movant in that the evidence both for the State and movant conclusively showed the beer to be going to the State of Florida, or the State of Alabama, and . . in either event movant contends it would have been legally possessed." The ground fails to show whether or not it was legal to possess and sell beer in the State of Alabama. Indeed, there appears to be no competent evidence in the record to show this fact. In these circumstances, we can not hold that the charge is erroneous for the reason assigned.

It appears from the fifth ground that when the court recalled the jury and inquired whether a question of law or fact was troubling them, and the foreman replied: "As to whether or not he was going to Alabama or Florida," the court instructed the jury as follows: "That's the sole question for you to determine. You will remember the charge given by you in reference to it; also the charge with reference to a defendant's statement. That is the sole question for you to determine." Error is assigned upon this charge upon the ground that "it unduly restricted the issue to be decided, and . . the court should have instructed the jury that in either event it would be their duty to acquit movant," and upon the further ground that "these instructions were erroneous as a matter of law." We hold that there is no merit in the assignment of error.

In the sixth ground it is averred that the court erred in refusing

a written request to charge in the language of section 6 the act of Congress approved March 22, 1933, said section being as follows: "In order that beer, ale, porter, wine, similar fermented malt or vinous liquor, and fruit juice, containing 3.2 per centum or less of alcohol by weight, may be divested of their interstate character in certain cases, the shipment or transportation thereof in any manner or by any means whatsoever, from one State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, or from any foreign country, into any State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, which fermented malt or vinous liquor or fruit juice is intended, by any person interested therein, to be received, possessed, sold, or in any manner used, either in the original package or otherwise, in violation of any law of such State, Territory, or District of the United States, or place noncontiguous to but subject to the jurisdiction thereof, is hereby prohibited. Nothing in this section shall be construed as making lawful the shipment or transportation of any liquor or fruit juice the shipment or transportation of which is prohibited by the act of March 1, 1913, entitled 'An act divesting intoxicating liquors of their interstate character in certain cases.'" While the requested charge was not given in the language of the statute, as requested, yet the court applied it to the facts of the case in such a way as to make its meaning clearer to the average juror than would the reading of the act itself; and we hold that the court's refusal to give the charge requested was not reversible error for any reason assigned.

The seventh ground complains of the court's refusal to give the jury the following charge: "I charge you that it is not against the law of this State to carry beer not more than 3.2 per centum of alcohol by weight through this State as an interstate shipment, so long as it is not possessed, received, sold, or intended to be used in violation of the laws of this State." The judge, in his general charge to the jury, sufficiently covered the principle embodied in the foregoing request to charge, and we hold that he did not err in refusing to give it.

Complaint is made in the eighth ground that the court refused to give the jury the following charge: "I charge you that the term interstate commerce includes transportation from any State

to any other State, which transportation may be accomplished by means of an automobile." The court's general charge was directly based upon the fact that "interstate commerce includes transportation . . by means of an automobile;" and we hold that the ground is not meritorious.

In the ninth and last ground error is assigned upon the court's refusal to give the jury this charge: "I charge you further that if you find the defendant R. J. Proctor had possession of beer 3.2 per centum of alcohol by weight or less, and further find that he bought the same in Tennessee and was carrying it to the State of Alabama, and the possession here was merely incidental to that end, he would not be guilty of the possession of beer in Georgia." We think that "beer . . containing 3.2 per centum or less of alcohol by weight" is divested of its interstate character when it is being transported into a State where the possession and sale of such beer is illegal. See the act of Congress approved March 22, 1933, supra. Before that act was passed, our Supreme Court, in *Gaines* v. *Holmes,* 154 *Ga.* 344, 357 (114 S. E. 327), said: "Interstate shipments of intoxicating liquors are permitted when, and only when, they pass from one State into another State, the latter of which does not make the receipt of such liquors unlawful." The only evidence tending to show whether or not the sale and possession of beer in the State of Alabama was legal is the following statement of the witness Cecil Nelson: "The defendant told me they had legalized beer in Phenix City, Alabama, and that he could double his money there." We are satisfied that this evidence was not sufficient to show that the sale and possession of beer "containing 3.2 per centum or less of alcohol by weight" was lawful in Alabama. It may also be stated that the status of the law relative to possessing or selling the beer referred to in the State of Alabama does not appear from the ground under consideration. In these circumstances, we hold that the court properly declined to give the jury the requested charge.

In conclusion, we hold that the trial judge did not commit reversible error in overruling the motion for a new trial for any reason assigned.

*Judgment affirmed. Broyles, C. J., and Guerry, J., concur.*