## 62442. TEAGUE v. THE STATE.
## 62443. BATTLES v. THE STATE.

Pope, Judge.

Gary E. Battles and Gregory E. Teague were indicted separately for the burglary of the residence of Mattie Williams, tried together and convicted. They appeal, enumerating as error the insufficiency of the evidence to support the verdicts and the refusal of the trial judge to recharge the jury upon request that no inference should be drawn from the failure of the defendants to take the stand in their own behalf.

1. The state introduced evidence establishing that Mrs. Williams returned from work on December 20, 1980 to discover that her house had been burglarized. She called the sheriff's office and Investigator Johnson arrived at her home shortly thereafter. He dusted for fingerprints and she gave him a list of items missing. When he asked her if she knew "anybody that would possibly know where the items [were] in her house, or in her barn, or anything like that, any suspects that she might have in mind," she named Teague. Johnson immediately went to Teague's residence, knocked on the door and received no answer. However, he noticed an automobile parked in the yard with a string of purple beads, hanging on a piece of chrome over the back fender, which matched a description Mrs. Williams had given him of some missing jewelry. There was also a pink Valentine candy box lying on the floor of the car. Johnson returned to Mrs. Williams, described the items to her, and she verified they had been taken from her home. Johnson then went back to the Teague residence and knocked until the door was opened by a "lady [who] went back in and got Mr. Greg Teague to come to the door." Johnson asked Teague who the car belonged to and Teague "said it was Gary Battles' and his girl friend . . ." When Johnson asked where Battles and his girl friend were, Teague "said they were in the front room asleep in the bed with his wife." Johnson requested permission to search this room and Teague agreed. Johnson then found all the other items described as missing from her residence by Mrs. Williams and arrested Teague and Battles. At the close of the state's evidence both defendants moved for directed verdict of acquittal, which was denied, and the defense rested without presenting evidence.

Defendants contend that because no physical evidence was offered as to ownership or right of possession of "the Teague's residence" or of the automobile where the stolen articles were found, there was insufficient evidence to place them in exclusive possession of the recently stolen property. We do not agree. Within two hours of the burglary report to police, Battles and Teague were found in

possession of the items taken. The car in which some stolen articles were found was parked at the house where the police investigator testified he knew Teague lived. Teague testified that Battles owned the car and that he and Battles occupied the bedroom in which other objects were located during a search consented to by Teague. No evidence or testimony was offered in contravention of this.

It can be seen that the state's case rested on circumstantial evidence by which it sought to prove by the recent "possession" of stolen property that Battles and Teague committed the burglary of Mrs Williams' residence. "The general rule regarding constructive possession was stated in *Watson v. State,* 93 Ga. App. 368 (1) (91 SE2d 832) [1956]: 'Where immediate and exclusive possession of an automobile, locker room, or other premises is shown, the inference is authorized that the owner of such property is the owner of what is contained therein, and this inference has been referred to as a rebuttable presumption. (Cits.)' However, '(a)s to automobiles, the rule does not apply where there is evidence in the case that the defendant has not been in possession of the vehicle for a period of time prior to the discovery of the contraband or that others have had access to it.' [Cits.] Furthermore, ' "(m)erely finding contraband on premises occupied by a defendant is not sufficient to support a conviction if it affirmatively appears from the evidence that persons other than the defendant had equal opportunity to commit the crime." *Gee v. State,* 121 Ga. App. 41, 43 (172 SE2d 480) [1970]. While *Gee* applies to premises, the same rule appertains to automobiles. (Cit.)' " *Davis v. State,* 146 Ga. App. 629 (2) (247 SE2d 210) (1978). Accord, *Williamson v. State,* 248 Ga. 47 (281 SE2d 512) (1981).

There was no evidence in the instant case that anyone other than Battles and his girl friend and Mr. and Mrs. Teague occupied the bedroom or had use of the vehicle where the stolen articles were recovered. Therefore, "[t]he evidence does not affirmatively show equal access of other persons to the house, so as to vitiate the conviction (*Gee v. State,* [supra]). It shows instead that [defendants and their female companions] were the only people living there at the time of the search ... To make an affirmative showing of equal access, it is not enough to show that others might have had equal access but it must affirmatively appear that others did have equal access. It is not necessary that the state remove every possibility of the defendant's innocence, [cit.], but only that the evidence be sufficient to convince [any] rational trier of fact of the defendant's guilt beyond a reasonable doubt." *Valenzuela v. State,* 157 Ga. App. 247, 249-250 (277 SE2d 56) (1981). "The mere possibility that someone other than the defendant ... committed the crime charged in the indictment is

not such a reasonable hypothesis as must be excluded in order for circumstantial evidence to authorize a conviction of the defendant." *Castleberry v. State,* 152 Ga. App. 769, 770 (264 SE2d 239) (1979). Compare *Patterson v. State,* 159 Ga. App. 290 (283 SE2d 294) (1981). The evidence here was sufficient to authorize any rational trier of fact to find the defendants guilty beyond a reasonable doubt of the offense charged. Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Williamson v. State,* supra.

2. After the jury had begun deliberations, the foreman returned with a question for the court and requested that the judge recharge "the portion where you were telling us about the defendants taking the stand." The trial judge did not "recall having charged that principle of law" and refused to give the entire charge again. Defense counsel then orally requested "that the jury be instructed that there is no inference that can be drawn by the failure of the defendants to take the stand and testify." When the court offered to give "a charge on the defendant testifying or not, if you'll agree to it," appellant's attorney refused. After a somewhat obfuscated discussion as to what instructions the jury was referring to, the court recharged on reasonable doubt and recent possession of stolen property, warning the jury not to place undue emphasis on these instructions. Defense counsel objected to the failure to give his requested charge and enumerates such failure as error on appeal, citing the recent holding of the United States Supreme Court in Carter v. Kentucky, 450 U. S. 288 (101 SC 1112, 67 LE2d 241) (1981).

In Carter, the defendant elected not to testify after conferring with his attorney. Upon returning to open court defense counsel requested the judge to instruct the jury: " 'The (defendant) is not compelled to testify and the fact that he does not cannot be used as an inference of guilt and should not prejudice him in any way.' " Id. at 289. The trial court refused to give the requested charge. The Supreme Court reversed, holding that the defendant had a right to the requested instruction under the Fifth and Fourteenth Amendments and that accordingly, "a state trial judge has the constitutional obligation, upon proper request, to minimize the danger that the jury will give evidentiary weight to a defendant's failure to testify." Id. at 305. The court also noted that "[t]he majority of the States, by judicial pronouncement, require that a defense request for such a jury instruction be honored. See, e.g., Woodward [sic] v. State, 234 Ga. 901 (218 SE2d 629) [1975]." Id. at 290 n. 2.

The Supreme Court does not specify in Carter whether or not a proper request to charge must be in writing, but it appears from the circumstances set forth in the opinion that the request there, as in the

instant case, took place during a colloquy between court and counsel, and was therefore only oral. *Woodard,* on the other hand, holds that in the absence of an appropriate written request it is not error to fail to give the charge, and this continues to be the rule in this state. *Woodard,* supra at (7b); *Stephens v. State,* 157 Ga. App. 414 (1) (278 SE2d 70) (1981). Carter was decided on March 9, 1981, ten days after defendants were tried. *Woodard* was cited with approval by the Supreme Court in Carter, and we will adhere to its holdings. As defendants neither objected to the original charge when given nor properly requested the additional instruction in writing, the trial judge did not err in refusing to give the charge in issue. *Carpenter v. State,* 160 Ga. App. 94 (286 SE2d 329) (1981).

*Judgments affirmed. Quillian, C. J., and McMurray, P. J., concur.*

DECIDED JANUARY 5, 1982.

*Bobby Lee Cook,* for appellant (case no. 62442).
*W. Benjamin Ballenger,* for appellant (case no. 62443).
*David L. Lomenick, Jr., District Attorney, Roland L. Enloe, Jr., Assistant District Attorney,* for appellee.