76399. IN THE INTEREST OF C. A. A.

(371 SE2d 247)

BIRDSONG, Chief Judge.

C. A. A., age 15, was adjudicated delinquent upon a petition alleging a violation of the Georgia Controlled Substances Act by having in his possession "less than an ounce [of marijuana], in his vehicle when the vehicle was searched by police officers." Appellant complains on appeal only on the general grounds, that the finding is contrary to the law and the evidence and not supported by the evidence. *Held*:

The investigating officer testified he received information from a confidential informant about a gray Pontiac Trans Am, with a certain license plate number, which stopped at Dye's Tavern in Albany. Two white youths and a black youth were in it. The black youth got out, went into the tavern and returned with marijuana. With this information, the officer and his partner drove to Dye's Tavern and saw this very same car pull up to Dye's Tavern again. The officer watched through binoculars. A black male got out and went into the tavern. There was no testimony that he appeared to have anything with him when he came out of the tavern and got in the car. The police officers could not see inside the car. The car's driver got out and looked under the hood as if something was wrong. At this point, the officer drove up behind the Trans Am and he and his partner got out of their car. They identified themselves as police officers and asked the occupants of the Trans Am to get out and, when they did so, patted them down.

The appellant, C. A. A., had been sitting in the backseat directly behind the driver. When the group emerged from the car, the officer asked who owned the car and C. A. A. said he did. When the officer told C. A. A. he had information about some drugs and he wanted to search the car, C. A. A. said, "Fine, go ahead." The officer found, directly under the seat behind the driver's seat, two manila envelopes of what tested to be marijuana.

The officer testified he never ran a license check on C. A. A. to see if he had a driver's license. He testified on cross-examination that C. A. A. did state to him sometime during the conversation that his mother owned the car, but the officer was not sure whether C. A. A. imparted this information before or after they arrived at the police station. In fact, the officer testified he did not know who owned the car. The officer testified that C. A. A. did not act differently than anyone else, that he never saw C. A. A. with the marijuana, and in

fact could not see in the car at all. The other three persons in the car, two males and a female, were in fact adults, and the officer indicated on the stand that he did not know at the time that C. A. A. was a juvenile.

We do not find this circumstantial evidence sufficient to authorize a rational trier of fact to find this juvenile himself possessed the marijuana beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis. OCGA § 24-4-6; *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

The appellant juvenile was in the backseat of a car with three adults. There is no evidence C. A. A. knew the marijuana was in the car. The car was being driven by another adult. It was not proven who owned the car; although the officer testified C. A. A. at first said the car was his, he also testified C. A. A. said the car was his mother's. The officer did not, according to the evidence, see the black male return from the tavern with two manila envelopes; in fact, he could not see inside the car at all and saw C. A. A. engage in no suspicious behavior. In fact, he did not see anyone indulge in suspicious behavior, except that the adult black male went into the tavern and then came out, which was suspicious only because the confidential informer had just told the officer he had seen a gray Trans Am with three persons in it and one, a black male, got out and returned from the tavern with marijuana. The only evidence tying C. A. A. to possession of the marijuana under the seat behind the driver's seat is his presence in the car and his proximity to the seat.

Ordinarily, the factfinder is in the best position to determine questions of reasonableness when evidence of guilt is circumstantial. *Harris v. State*, 236 Ga. 242 (223 SE2d 643); *Lewis v. State*, 149 Ga. App. 181 (254 SE2d 142); *Gee v. State*, 146 Ga. App. 528 (246 SE2d 720); *Pless v. State*, 142 Ga. App. 594 (236 SE2d 842); *Townsend v. State*, 127 Ga. App. 797, 799 (195 SE2d 474). In this case the finder of fact stated that "there is no doubt [C. A. A.] was in his mother's car," and that he was most impressed with this redoubtable fact, since there is "a legal presumption that if you own the car or have possession of the car or the car is in your control, that you are supposed to know what is in it. . . . And you are responsible for what is in [it]." This is not the law.

In *Farmer v. State*, 152 Ga. App. 792, 795 (264 SE2d 235) (cert. den.), we held, after examining the rule in many cases, " ' "Where immediate and exclusive possession of an automobile, locker room, or other premises is shown, the inference is authorized that the owner of such property is the owner of what is contained therein, and this inference has been referred to as a rebuttable presumption. [Cits.]" *However, "(a)s to automobiles, the rule does not apply where there is evidence in the case that the defendant has not been in possession*

*of the vehicle for a period of time prior to the discovery of the contraband or that others have had access to it.* [Cit.]" ' (Emphasis supplied.)" Where as here the evidence shows other persons had equal access to the contraband, and there is no evidence C. A. A. had complete possession and control of the car *at any time* the application of a presumption of possession of any contraband found in it is not "a sound, abstract principle of law" and is " 'a dangerous rule for the numerous owners of motor vehicles.' " Id.; *Shepherd v. State*, 77 Ga. App. 857, 858 (50 SE2d 111). The *Farmer* rule just stated was reaffirmed in *Fears v. State*, 169 Ga. App. 172 (312 SE2d 174). C. A. A. was not driving the car, nor was he even in the front seat so as to exercise control over the operation of the car. The fact that C. A. A. told the officer at one point it was his car and also told him at another point it was his mother's, and the fact that he gave permission to search the car, altogether do not prove or tend to prove he had complete control and possession of the car for any period of time before the marijuana was found. That the marijuana was found under the loose seat where C. A. A. was sitting establishes only proximity or presence. These circumstances, considering the greater control the three adults might have had, and the equal access they did have, do not permit the application of any *presumption* that C. A. A. was in possession of the marijuana.

The State concedes that there is no presumption of possession and control where other persons have had equal access to the contraband, but argues that this contraband was located in a place in the car where only appellant could have had access to it, as it was "underneath the seat directly where he was sitting." However, the evidence also showed the backseat was loose. It certainly cannot be said as a matter of law that none of the three adult persons in the car had equal access to have put it where it was found, and there was nothing in the evidence from which the factfinder could conclude they did not have equal access to it as a matter of fact.

Moreover, there is no evidence at all as to how or when this marijuana came to be lodged under the back seat, or even that the adult male whom the officer saw entering the tavern bought the marijuana while he was in there, since there is no evidence the officer saw him emerge with any object in his hands.

Even assuming C. A. A. had been in "immediate and exclusive control" of the vehicle, no presumption of possession arises where there is evidence of equal access by others. Id. p. 796. Without the presumption of possession and control, what is left is mere presence at the scene of a crime or, more to the point, mere presence near hidden contraband. As a matter of law, this is not enough to support a finding of criminal possession of the contraband beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis. See

*Brown v. State*, 250 Ga. 862, 864 (302 SE2d 347). See esp. *Denham v. State*, 144 Ga. App. 373, 374-375 (241 SE2d 295).

Accordingly, we find this adjudication cannot be sustained under *Jackson v. Virginia*, supra.

*Judgment reversed. Banke, P. J., concurs. Beasley, J., concurs specially.*

BEASLEY, Judge, concurring specially.

The real problem here is not so much possession of the car but possession of the marijuana. The evidence supports a reasonable inference that the youth was not a mere passenger and otherwise unconnected to the car but instead had procured it for the foursome from his mother and to that extent controlled it and its contents.

However, there was no probative evidence that the marijuana was brought into the car and placed under the back seat where he was sitting while he was in the car, or that he otherwise knew it was there. The evidence that it was recently obtained by the black male from the tavern and, by inference, hidden right behind appellant's feet, was inadmissible to prove appellant's guilty knowledge. The reason is that this evidence was hearsay, based totally on what the confidential informant related to the officer. The informant did not testify.

The factfinder would have had to rely on this evidence to draw the inference that appellant participated in secreting the two 2"x3" manila envelopes and the 6½" by 3½" package of rolling papers or at least that he knew they were beneath his seat and attempted to bluff the officer by exhibiting some naive bravado in permitting the search. Thus, neither constructive possession in violation of OCGA § 16-13-2 (b) nor aiding and abetting in the commission of the same (OCGA § 16-2-20 (b) (3)) could be supported.

With this addition, I concur fully with the opinion.

DECIDED JUNE 30, 1988.

*Mary M. Young-Cummings*, for appellant.
*Robert H. Revell*, for appellee.